## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

RAFAEL SILVA, on behalf
of himself and on behalf of
all others similarly situated,                    CASE NO.: 6:23-cv-00104-CEM-DCI

      Plaintiff,

v.

DOORDASH, INC.,

      Defendant.

_____/

## DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE COLLECTIVE ALLEGATIONS, STAY PROCEEDINGS, AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendant DoorDash, Inc. ("DoorDash"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and Rule 12(b)(1) of the Federal Rules of Civil Procedure, respectfully moves this Court to enter an Order compelling Plaintiff Rafael Silva ("Silva" or "Plaintiff") to arbitrate his claims against DoorDash, striking his collective allegations, and staying this action pending the resolution of the arbitration, and states as follows:

## I.    PRELIMINARY STATEMENT

Plaintiff, on behalf of himself and others, brings this action against DoorDash alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 203, *et seq*.

Plaintiff cannot adjudicate his FLSA claim in this forum or bring such claim on behalf of others. Plaintiff voluntarily entered into a valid arbitration agreement covering any and all disputes against DoorDash. Under his arbitration agreement, Plaintiff agreed to bring such causes of action on an individual basis and solely in arbitration. Plaintiff also agreed to delegate to the arbitrator threshold issues related to the enforceability and validity of his arbitration agreement.

Federal courts across the country have unanimously enforced DoorDash's arbitration agreements with independent contractor delivery providers ("Dashers") like Plaintiff. *See, e.g., Mullo v. DoorDash, Inc.*, 2023 WL 1971897 (S.D.N.Y. Jan. 17, 2023); *McGrath v. DoorDash, Inc.,* 2020 WL 6526129, at *1 (N.D. Cal. Nov. 5, 2020); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891 (N.D. Cal. 2018); *Austin v. DoorDash, Inc.*, 2019 WL 4804781 (D. Mass. Sept. 30, 2019); *Edwards v. DoorDash, Inc.*, 888 F.3d 738 (5th Cir. 2018). Additionally, courts unanimously have held that the FAA's transportation worker exemption does not apply to Dashers and other local food delivery drivers. *See Magana*, 343 F. Supp. at 899: *McGrath*, 2020 WL 6526129 at *6-*9; *Wallace v. Grubhub Holdings, Inc.,* 970 F.3d 798, 800-803 (7th Cir. 2020).

Accordingly, DoorDash moves, under the FAA[1], for an Order compelling Plaintiff to submit his claims to individual arbitration, striking Plaintiff's collective allegations, and staying this litigation pending individual arbitration.

---

[1] To the extent necessary, DoorDash moves in the alternative to compel arbitration under Florida state law. As set forth below, the outcome is the same regardless of whether the FAA or Florida state law applies: Plaintiff must arbitrate his claims. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) (under Florida law, as under the FAA, the court considers the following three elements in ruing

-2-

## II.    STATEMENT OF FACTS

### A.    DoorDash's Platform Connects Consumers, Merchants, And Dashers.

DoorDash is a technology company headquartered in San Francisco, California that facilitates delivery through its online platform. Declaration of Trevor Reader "Reader Decl." ¶ 3.[2] The platform connects consumers, a broad array of merchants, and Dashers. *Id*. Consumers can access the platform through DoorDash's website or its mobile application ("DoorDash app") on a smartphone. *Id.* Dashers typically receive delivery opportunities through a separate mobile application, the Dasher app, on their smartphone or other mobile device. *Id*. The DoorDash platform enables consumers to order prepared food or other items (*e.g.,* groceries) from local restaurants or other local merchants (*e.g.*, grocery or convenience stores). *Id.* The local restaurant or other merchant prepares the order for pickup, and the platform offers nearby Dashers the opportunity to pick up the order and deliver it to the consumer. *Id*.

### B.    Plaintiff Signed Up For A Dasher Account And Entered Into A Binding Arbitration Agreement With DoorDash.

The process for becoming a Dasher has varied slightly over time, but the following description represents the process.[3] Prospective Dashers undergo a multi-

---

on a motion to compel arbitration: (1) whether a valid written agreement exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived).

[2] The Declaration of Trevor Reader is attached as Exhibit A.

[3] DoorDash has updated its ICA from time to time, but most provisions relevant to this motion have remained materially identical. All references to the ICA and arbitration agreement in this motion, unless otherwise stated, refer to the version of the ICA and arbitration agreement last accepted by Plaintiff, which was issued January 30, 2022. Reader Decl., Ex. C. The concurrently filed Reader Declaration includes all relevant ICA versions as exhibits.

step process in signing up for a Dasher account. Reader Decl., ¶ 5. At the time Plaintiff signed up for a Dasher account, on the first sign-up screen, he had to enter his email address. *Id.* The first sign-up screen notified Plaintiff that he must press a button to continue with the sign-up process, and it stated that by doing so: "I agree to the **Independent Contractor Agreement** and have read the **Dasher Privacy Policy**":



Reader Decl., ¶ 5, 7, Ex. A.

The words "Independent Contractor Agreement" and "Dasher Privacy Policy" are highlighted and hyperlinked to the ICA and Dasher Privacy Policy so users can review those documents before indicating their agreement to these policies. *Id.*, ¶ 9. Prospective Dashers can click on the hyperlink for the ICA and scroll through the ICA at their leisure, on their own terms, and seek the input of an attorney or trusted advisor if they so choose. Reader Decl., ¶¶ 9-10. Prospective Dashers can also choose to refrain from creating an account. *Id.* at ¶ 10. If they elect to proceed, however, they must first

accept the ICA in accordance with the method displayed on the first sign-up screen. *Id.* There is no way for a prospective Dasher to complete the sign-up process without accepting the ICA. *Id.*

Plaintiff signed up for a Dasher account and accepted the ICA by completing the process described above on August 24, 2021. Reader Decl., ¶ 7. The ICA accepted by Plaintiff at the time he completed his sign-up process contained an arbitration agreement. *Id.*, ¶ 11-13, Ex. B at XI, Ex. C, at XII.

DoorDash's ICA undergoes slight, periodic updates. When those updates occur, Dashers are notified prior to the changes taking effect. Reader Decl., ¶ 12. During the time Plaintiff has used the platform, Dashers were required to affirmatively indicate assent to the new terms before continuing to use the DoorDash platform. *Id.*, ¶¶ 12-13. Plaintiff last completed a delivery on the Dasher app on March 26, 2023, and therefore his operative ICA (and arbitration agreement) was the ICA in effect between January 30, 2022, and the present. *Id.*, ¶ 13, Ex. C.

### C.    Plaintiff Agreed To Arbitrate His Claims Against DoorDash On An Individual Basis.

The operative ICA accepted by Plaintiff contains the following bold, capitalized text in the second paragraph of the first page, putting Plaintiff on notice of the arbitration agreement:

> **IMPORTANT: PLEASE REVIEW THIS AGREEMENT CAREFULLY. IN PARTICULAR, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION XII,[4] AS IT**

---

[4] The ICA in effect December 16, 2020, through January 30, 2022, references Section XI instead. Reader Decl. Ex. B.

4883-0875-1188.12 / 084516-1189

**REQUIRES THE PARTIES (UNLESS YOU VALIDLY OPT OUT OF ARBITRATION, AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY ACCEPTING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS, INCLUDING SECTION XII, AND HAVE TAKEN THE TIME AND SOUGHT ANY ASSISTANCE NEEDED TO COMPREHEND THE CONSEQUENCES OF ACCEPTING THIS AGREEMENT.**

Reader Decl., ¶ 13 and Ex. C.

Section XII[5] of the ICA is entitled "MUTUAL ARBITRATION PROVISION." Reader Decl. ¶ 13, Ex. C at XII. Under that section, "CONTRACTOR and DOORDASH mutually agree" to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of suing in court, including "any and all disputes arising out of or relating to this Agreement [or] CONTRACTOR's classification as an independent contractor." *Id.*, Ex. C at 12 ¶ 1. Disputes covered by the arbitration agreement include claims under the "Fair Labor Standards Act (or its state or local equivalents) [and] state and local wage and hour laws[.]" *Id.*

The arbitration agreement also specifies that any arbitration must be conducted on an individual basis only: "CONTRACTOR and DOORDASH mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective

---

[5] In Plaintiff's ICA for the period December 16, 2020 through January 30, 2022, the Mutual Arbitration Provision is Section XI. Reader Decl., ¶ 13, Ex. C.

-6-

action and/or representative action … ('Arbitration Class Action Waiver')." Reader Decl.,  Ex. C at XII, ¶ 4.

Although the arbitration agreement specifies that a court must determine enforceability of the Arbitration Class Action Waiver, it delegates "[a]ll other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable" to the arbitrator. *Id.*

Though Plaintiff was required to accept the ICA to create a Dasher account, he had the option to opt out of arbitration by submitting a notice to DoorDash within 30 days of acceptance of the ICA. Reader Decl. ¶¶ 11, 13, 15,  Ex. C at XII ¶ 9. Plaintiff did not opt out of arbitration. Reader Decl. ¶ 17.

## III.   PLAINTIFF MUST ARBITRATE HIS CLAIMS AGAINST DOORDASH ON AN INDIVIDUAL BASIS

Federal courts across the country have uniformly held that DoorDash's arbitration agreements with Dashers are enforceable. *Mullo*, 2023 WL 1971897 at *1; *McGrath*, 2020 WL 6526129, at *1, reconsideration denied, 2020 WL 7227197 (N.D. Cal. Dec. 8, 2020); *Webb v. DoorDash, Inc.*, 451 F. Supp. 3d 1360 (N.D. Ga. Jan. 9, 2020) (compelling arbitration); *McKay v. DoorDash, Inc.*, No. 3:19-cv-4289, Dkt. 39 (N.D. Cal. Oct. 25, 2019) (same); *Magana*, 343 F. Supp. 3d at 899–900 (same); *Edwards,* 888 F.3d 738 (same); *Austin,* 2019 WL 4804781 (same). There is no basis to depart from this precedent.

A. **The Federal Arbitration Act Applies To The ICA's Arbitration Provision.**

Courts have unanimously concluded that the FAA governs DoorDash's ICA with Dashers. *See Magana*, 343 F. Supp. 3d at 902 (applying FAA and rejecting application of FAA Section 1 exemption to Dashers); *McGrath*, 2020 WL 6526129, at *5 (finding the FAA applies to plaintiffs' agreements with DoorDash). As affirmed by the U.S. Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011), the FAA declares a liberal policy favoring the enforcement of arbitration agreements, stating: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA permits private parties to "trade[] the procedures … of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991), *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). It is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To these ends, the FAA not only places arbitration agreements on equal footing with other contracts but amounts to a "congressional declaration of a liberal federal policy

favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987), *quoting Moses H. Cone*, 460 U.S. at 24; *Concepcion*, 563 U.S. at 344.

The ICA's arbitration agreement is indisputably governed by the FAA because the arbitration agreement states: "The parties expressly agree that this [Arbitration Agreement] shall be governed by the FAA even in the event CONTRACTOR and/or DOORDASH are otherwise exempted from the FAA." Reader Decl., Ex. C at XII ¶ 1. This brings the arbitration agreement in the ICA within the scope of the FAA. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (courts must "enforce arbitration agreements according to their terms."); *see also McGrath*, 2020 WL 6526129 at *5 (noting the ICA expressly provides the FAA governs the agreement); *Wallace,* 970 F.3d at 803 (finding that "there can be no doubt" that the FAA applies to Grubhub drivers who used a mobile application to receive delivery requests). Accordingly, the FAA governs the arbitration agreement in the ICA.

> ### B. Plaintiff Cannot Meet His Burden To Establish The FAA Transportation Worker Exemption Because He Was Not Engaged In Foreign Or Interstate Commerce

Through meet and confer efforts, DoorDash learned that Plaintiff intends to argue he is exempt from the FAA due to the "transportation worker" exemption under Section 1 of the FAA. However, he will be unable to meet his burden of demonstrating that, as a local food delivery provider, he was part of a class of workers engaged in the movement of goods in interstate commerce. Indeed, every court to consider this issue has declined to apply the FAA's transportation worker exemption to Dashers and similar local food delivery providers. This Court should not be the first to do so.

The FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This FAA provision exempts "only contracts of employment of transportation workers." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Recently, the Supreme Court interpreted this exemption to apply only to "transportation workers" who play a "necessary role" in the interstate transport of goods. *Southwest Airlines Co. v. Saxon*, ⸺ U.S. ⸺, 142 S. Ct. 1783, 1789-90 (2022). Plaintiff bears the evidentiary burden of establishing the exemption. *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 913 (N.D. Cal. 2020); *see also Scott v. Loomis Armored U.S., LLC*, 2021 WL 6136181, at *3 (E.D. Calif. Dec. 29, 2021); *Rogers v. Royal Caribbean*, 547 F.3d 1148, 1151 (9th Cir. 2008).

To determine whether Plaintiff is an exempt transportation worker under Section 1, the Court must define the relevant "class of workers" to which Plaintiff belongs, and then ascertain "whether that class is 'engaged in foreign or interstate commerce.'" *Saxon*, 142 S. Ct. at 1788, *quoting* 9 U.S.C. § 1. A "class of workers" is defined by the "actual work" that those workers typically do on the job, not necessarily by the industry in which they work. *Id*. Here, Plaintiff belongs to a class of Dashers who deliver meals prepared at local restaurants and other goods sold by local merchants. Those deliveries are made in response to orders placed by local customers. In the course of his deliveries (primarily from fast casual restaurants in the greater Orlando metro area), Plaintiff never crossed state lines and traversed, on average, only a few miles. Reader Decl. ¶ 18.

-10-

Dashers are not exempt under Section 1. *See Magana*, 343 F. Supp. 3d at 899-900 (rejecting Section 1 exemption to a dasher who, like Plaintiff here, never alleged he crossed state lines as part of deliveries). The *Magana* decision is consistent with a host of other decisions holding that couriers who deliver meals and goods from local merchants are not within a class of workers "engaged in foreign or interstate commerce" and thus are not exempt under Section 1. *See Wallace*, 970 F.3d at 802 (noting to fall within the exemption, workers must be "connected not simply to the goods, but to the act of moving those goods across state or national borders," and rejecting GrubHub drivers' argument they fell within the Section 1 exemption because they carried goods that have moved across state and national lines (*i.e.* potato chips or a dessert from Switzerland)); *Archer v. Grubhub Holdings, Inc.*, 190 N.E. 3d 1024, 1033 (Mass. 2022) (food delivery drivers do not fall in the Section 1 exemption); *Immediato v. Postmates, Inc.*, 54 F.4th 67, 81 (1st Cir. 2022) (couriers who delivered goods from local restaurants and retailers were not exempt under Section 1); *Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022) (local delivery drivers were not exempt under Section 1 because they were not engaged in transporting the goods across borders via the channels of foreign or interstate commerce), *citing Saxon*, 142 S. Ct. at 1790; *Bissonnette v. LePage Bakeries Park St., LLC*, 49 F.4th 655 (2nd Cir. 2022) (employees who locally deliver baked goods for a bakery to stores and restaurants are not exempt under Section 1); ; *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 865-66 (9th Cir. 2021) (Uber drivers are subject to the FAA because most of their trips are intrastate); *Lee v. Postmates, Inc.*,

2018 WL 4961802 at *8 (N.D. Cal. October 15, 2018) ("The [c]ourt is aware of no authority holding that couriers who deliver goods from local merchants to local customers are 'engaged in interstate commerce' within the meaning of § 1 of the FAA merely because some such deliveries might include goods that were manufactured out of state").[6]

Although some (but not all) of these decisions pre-date *Saxon*, the result of the exemption analysis to a local courier like Plaintiff remains unchanged. In *Saxon*, the Supreme Court held that airline industry employees "who physically load and unload cargo on and off planes traveling in interstate commerce" on a "frequent basis" are exempt transportation workers under the FAA. 142 S. Ct. at 1789. The Court found it important that loading and unloading cargo from airplanes occurred while the "[interstate] transportation [is] still in progress." *Id*. at 1790 (internal quotation marks omitted). However, the Court refused to extend its holding to other airline employees such as shift schedulers and website designers or those with "duties further removed from the channels of interstate commerce or the actual crossing of borders." *Id*. at 1789-91, n.2 ("we need not address those questions to resolve this case"). It also noted

---

[6] In the Complaint, Plaintiff alleges "the Class regularly handles goods that have been transported across state lines." Compl., ¶ 19. To fall within the exemption, workers must be "connected not simply to the goods, but to the act of moving those goods across state or national borders," or put another way, "'engaged in *in the channels* of foreign or interstate commerce.'" *Wallace*, 970 F.3d at 802 (rejecting plaintiffs' argument they carried goods that have moved across state and national lines, noting that erasing the requirement that a worker must transport goods in interstate or foreign commerce would "sweep in numerous categories of workers whose occupations have nothing to do with interstate commerce"); *Lopez*, 47 F.4th at 433 (court found local delivery drivers were not exempt under § 1 and once the goods delivered by the local delivery drivers arrived at the local warehouse and were unloaded, anyone who interacted with the goods was no longer engaged in interstate commerce for the purposes of § 1).

"transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce" and must "at least play a direct and 'necessary role in the free flow of goods' across borders." *Id.* at 1790*; see also Lopez*, 47 F.4th at 433, *quoting Saxon*, 142 S. Ct. at 1790.

In *Immediato* (a post-*Saxon* decision), the First Circuit Court of Appeals held that "couriers who deliver meals and goods as the result of local purchases from local vendors are not within a class of workers 'engaged in foreign or interstate commerce' who are exempt from the FAA under section 1." 54 F. 4th at 81. As in *Immediato*, interstate commerce is not "still in progress" when a Dasher picks up a delivery from a local merchant ordered by a local consumer. *Id., citing A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 543 (1935) (once an interstate shipment arrives at a local retailer and is "there held solely for local disposition and use," the goods are no longer "in interstate commerce" under the National Industrial Recovery Act).

The Eleventh Circuit Court of Appeals decision in *Hamrick v. Partsfleet* is also instructive. In *Hamrick*, the court rejected the intrastate delivery drivers' view that the FAA's transportation worker exemption is met by performing intrastate trips transporting items which had been previously transported interstate. 1 F.4th 1337, 1349 (11th Cir. 2021). The *Hamrick* Court noted that the text of the transportation worker exemption, "'engaged in foreign or interstate commerce' modifies 'workers' and not 'goods,'" and, thus, "[t]he workers must be engaged—or '[o]ccupied' or 'employed,'—in interstate commerce." *Id.* at 1350 (internal citations omitted). In other words, Section 1 is directed at what the class of workers is engaged in, and not what it

is carrying. *Id.; Wallace*, 970 F.3d at 802 (rejecting local delivery drivers' argument that, because they delivered chips and chocolate that had originated out of state, they were exempt transportation workers).

Here, Dashers do not transport goods as part of their continuous movement in interstate commerce; rather they are part of an independent and contingent intrastate transaction that occurs when a local customer decides to place an order for prepared meal or groceries from local merchants. *Immediato*, 54 F.4th at 78 ("The interstate journey terminates when the goods arrive at the local restaurants and retailers to which they are shipped. Customers then purchase those meals and goods from local businesses. Thus, when the couriers set out to deliver customer orders, they do so as part of entirely new and separate transactions … In a nutshell, couriers making deliveries from local businesses are transporting goods as part of local intrastate commerce."). Accordingly, because Plaintiff does not belong to a class of workers in the transportation industry that engage in interstate commerce, the FAA's transportation worker exemption does not apply.

### C.    The Arbitration Agreement Is Valid And Must Be Enforced

Because arbitration is a matter of contract, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, courts generally look at two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). Any doubt

as to the proper interpretation of the agreement "should be resolved *in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses H. Cone*, 460 U.S. at 24–25 (emphasis added).

### 1. The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable

Before reaching these gateway issues, however, a court must first determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the [] court to enforce . . . ."). If the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, then the arbitrator must decide the threshold issues. *Howsam*, 537 U.S. at 83; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (courts may not override delegation clauses); *see also JPay, Inc. v. Kobel,* 904 F.3d 923, 944 (11th Cir. 2018) (holding that "[t]he district court lacked the power to decide whether or not the parties would arbitrate on a class basis" due to the inclusion of a clear and unmistakable delegation provision); *Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1271 (11th Cir. 2017) ("In the face of the parties' agreement to arbitrate gateway issues concerning the interpretation, applicability, enforceability, and formation of the arbitration agreement at issue, the district court was not free to pass judgment on the wisdom or efficacy of the provision in the first instance and should have compelled arbitration.").

4883-0875-1188.12 / 084516-1189

Here, the arbitration agreement unmistakably provides that, except for questions regarding the enforceability of the Arbitration Class Action Waiver, "[a]ll other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable … shall be determined exclusively by an arbitrator, and not by any court." Reader Decl., Ex. C at XII, ¶ 4.

Because the arbitration agreement includes a delegation clause for all issues other than the Arbitration Class Action Waiver, the delegation clause must be enforced, and there is no other work for the Court to do. *Edwards*, 888 F.3d at 746 (enforcing delegation clause in DoorDash's arbitration agreement with Dashers).

### 2.   The Gateway Issues Under The FAA Have Been Satisfied

Even if this Court were to find that it, and not an arbitrator, should determine arbitrability—the Court should compel Plaintiff's claims to individual arbitration because both of the "gateway" issues under the FAA have been met here.

### a.   A Valid Agreement To Arbitrate Exists

Whether parties agreed to arbitrate a dispute is governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Florida, a valid contract requires an offer, acceptance, consideration, and sufficient specification of its essential terms. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004); *Land Co. of Osceola County, LLC v. Genesis Concepts, Inc.*, 169 So. 3d 243, 247 (Fla. 4th DCA 2015); *Kolodziej v. Mason*, 774 F.3d 736, 740-41 (11th Cir. 2014). Agreements to arbitrate may be invalidated only

upon such grounds as exist at law or in equity for the revocation of any contract, such as duress, fraud, and unconscionability. 9 U.S.C. § 2; *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017); *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1326 (S.D. Fla. 2016). The party seeking to avoid arbitration bears the burden of establishing that the agreement in question should not be enforced. Here, there are no such grounds for revocation. Moreover, a written arbitration agreement need not be signed to be enforceable where the agreement provided for acceptance by continued work. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005).

Courts in this Circuit have consistently enforced work-related arbitration agreements with opt-out provisions similar to DoorDash's, thereby affirming the opt-out mechanism as a valid method of contract formation. *See Perera v. H&R Block Eastern Enterprises, Inc.*, 914 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012); *see also Suarez v. Uber Technologies, Inc.*, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016); *Abdullah v. American Express Co.*, 2012 WL 6867675, at *2 (M.D. Fla. Dec. 19, 2012), *adopted by*, 2013 WL 173225 (M.D. Fla. Jan. 16, 2013); *Wright v. Cir. City Stores, Inc.*, 82 F. Supp. 2d 1279, 1284-85 (N.D. Ala. 2000); *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th DCA 2008) (employee's continued employment after receiving dispute resolution policy sufficient to demonstrate assent to arbitration agreement).

There is no question of offer and acceptance in this case. First, DoorDash made Plaintiff an offer to sign up for a Dasher account to receive delivery opportunities in

exchange for acceptance of the ICA and the arbitration agreement contained in the ICA. Reader Decl., ¶¶ 5-8, Exs. A-C. Plaintiff accepted that offer by completing the sign up process. *Id.* Plaintiff expressly assented to the ICA and arbitration agreement when he signed up for a Dasher account. Reader Decl., ¶¶ 7-13, Exs. A-C. Plaintiff then subsequently agreed to be bound by an updated ICA when it was issued by DoorDash. *Id.*, ¶ 13-15, Ex. C. Moreover, after completing the sign-up process and accepting the ICA and arbitration agreement, DoorDash granted Plaintiff access to the Dasher app, and Plaintiff proceeded to utilize the Dasher app pursuant to their ICAs in order to receive delivery opportunities – further demonstrating assent and intent to be bound. *Id.*

DoorDash specifically provided him with express instructions regarding how to opt out of the arbitration agreement, which he did not do. Reader Decl. ¶¶ 15, 17  Ex. C at XII ¶ 9. Plaintiff accepted and became bound by the terms of the arbitration agreement when he continued to provide services pursuant to the ICA and did not opt out.

The requirement of consideration is also met in this case by the mutuality of the promise to arbitrate by both Plaintiff and DoorDash, and by Plaintiff's continued engagement as a Dasher. In Florida, continuation of work can constitute sufficient consideration for an arbitration agreement. *See Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005) (contract containing arbitration clause was valid and enforceable and supported by consideration in the form of continued work relationship); *see also Tranchant v. Ritz Carlton Hotel Co., LLC*, 2011 WL 1230734, at *4-

*5 (M.D. Fla. Mar. 31, 2011) (arbitration provision was supported by valid consideration in the form of continued work relationship in an at-will state). The consideration requirement is further met by the mutual obligation to arbitrate in DoorDash's Mutual Arbitration Provision in its ICA. *See Santos*, 984 So. 2d at 661, *citing Caley*, 428 F.3d at 1376; *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 356 (Fla. 2d DCA 2005). Accordingly, with all elements satisfied, the arbitration agreement is a valid contract.

### b. Plaintiff's Claims Are Covered By The Arbitration Agreement

"[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *Waffle House*, 534 U.S. at 289. This case does not present a close call. Plaintiff's arbitration agreement expressly states it applies to "any and all disputes arising out of or relating to this Agreement [or] CONTRACTOR's classification as an independent contractor." Reader Decl. Ex. C at XII, ¶ 1. Disputes covered by the arbitration agreement include claims under the "Fair Labor Standards Act (or its state or local equivalents) [and] state and local wage and hour laws[.]" *Id.* These are the precise claims brought by Plaintiff in his Complaint and, as a result, those claims are clearly covered by the arbitration agreement. *See, e.g., Caley*, 428 F.3d at (enforcing collective action waiver in compelling arbitration of individual's FLSA overtime claim); *Walthour v. Chipio Windshield Repair, LLC*, 745 F. 3d 1326, 1334-36 (11th Cir. 2014) (arbitration agreements and collective action waivers are enforceable in FLSA cases); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 n.7

(1984) (the phrase "arising out of or relating to" an underlying agreement language broad enough to cover other claims).

To the extent the language or scope of the arbitration agreement could be viewed as ambiguous (and it is not), as a matter of federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 U.S. at 24–25. Accordingly, all of Plaintiff's claims are covered by the arbitration agreement.

### D.   Plaintiff's Collective Allegations Should Be Stricken

As stated above, Plaintiff's arbitration agreement specifies that any arbitration must be conducted on an individual basis only, with both parties waiv[ing] their right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective, action and/or representative action[.]" Reader Decl., Ex. C at XII, ¶ 4. The arbitration agreement is also clear that the Court, not an arbitrator, must decide the enforceability of its Arbitration Class Action Waiver. Reader Decl., Ex. C at XII, ¶ 4, which states "any claim that all of part of this Arbitration Class Action Waiver is unenforceable … may be determined only by a court of competent jurisdiction and not by an arbitrator.".

It is well-established that class action waivers in arbitration agreements governed by the FAA are valid and enforceable. The Supreme Court has repeatedly upheld the enforcement of class action waivers. The Court held in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding

that the party agreed to do so." *Id*. at 684. The Court affirmed the enforceability of class waivers a year later, reiterating that the bedrock principle of the FAA is that arbitration agreements must be enforced as written. *Concepcion*, 563 U.S. at 352; *accord Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415-19 (2019) (courts may not compel parties to arbitrate in any manner that is "markedly different from . . . traditional individualized arbitration" and that "interferes with [the] fundamental attributes of arbitration"—informality, speed, and cost-efficiency—unless the parties expressly agreed to do so).

In *Epic Systems,* 138 S. Ct. 1612, the Court invalidated the "*Morris* rule" barring class and collective action waivers based on the purported violation of employees' rights under the National Labor Relations Act ("NLRA"). The Court rejected that reasoning, holding that the *Morris* rule ran afoul of the FAA because it was not a defense that "would render any contract unenforceable," but rather, it "attack[ed] (only) the individualized nature of the arbitration proceedings" and "interfere[d] with one of arbitration's fundamental attributes." *Id.* at 1622. The NLRA could not override class waivers because "[i]n the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Id.* at 1619. The Court concluded that its holding is consistent with its prior holding "decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does not displace the Arbitration Act or prohibit individualized arbitration proceedings." *Id.* at 1626.

Courts considering DoorDash's arbitration agreement with Dashers have followed suit. In *Magana* and *Mullo*, the courts enforced DoorDash's Arbitration Class Action Waiver and compelled the plaintiffs to arbitration on an individual basis. *Magana*, 343 F. Supp. 3d at 901; *Mullo*, 2023 WL 1971897 at *3-*4. Under binding Supreme Court precedent, the parties' agreement not to pursue class or collective claims is valid and must be enforced.

Plaintiff's class or collective claims should therefore be stricken, Plaintiff should be compelled to arbitrate his claims individually pursuant to his arbitration agreement, and his claims in this Court should be stayed pending the resolution of arbitration. *See Marc v. Uber Technologies, Inc.*, 2016 WL 7210886 at *4 (M.D. Fla. Dec. 13, 2016) (granting defendant's motion to compel arbitration and strike class action allegations).

## IV.    CONCLUSION

DoorDash respectfully requests that this Court compel Plaintiff to arbitrate his claims on an individual basis, strike Plaintiff's class and collective allegations, and stay further proceedings pending individual arbitration pursuant to 9 U.S.C. § 3.

## RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), DoorDash's counsel certifies the undersigned conferred with Plaintiff's counsel regarding the relief requested in this Motion on February 20, 2023. Plaintiff's counsel indicated Plaintiff objects to the relief requested herein.

Dated: March 27, 2023.                    Respectfully submitted,

                                          /s/ Natalie J. Storch
                                          _____
                                          Jessica T. Travers
                                          Florida Bar No.: 18129
                                          jtravera@littler.com
                                          Natalie J. Storch
                                          Florida Bar No. 269920
                                          Email: njstorch@ittler.com

                                          LITTLER MENDELSON P.C.
                                          111 North Orange Avenue, Suite 1750
                                          Orlando, FL 32801.2366
                                          Telephone:   407.393.2950
                                          Facsimile:   407.393.2929
                                          Fax:         305.603-2552

                                          Attorneys for Defendant

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that, on this 27th day of March 2023, a copy of the foregoing was filed using CM/ECF and served on all counsel of record.

                                          /s/ Natalie J. Storch
                                          _____
                                          Natalie J. Storch

4883-0875-1188.7 / 084516-1189

4883-0875-1188.12 / 084516-1189